Filed 12/7/23  P. v. Devine CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B323387 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA017820) |
| v. | |
| DAVID DEVINE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Charlaine F. Olmedo, Judge.  Reversed with directions.

Loyola Law School, Juvenile Innocence & Fair Sentencing Clinic, Christopher Hawthorne for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Chung L. Mar, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

David Devine, who pleaded no contest in 2001 to first degree murder, appeals from the superior court's order following an evidentiary hearing denying his petition for resentencing under Penal Code section 1172.6.[1] Devine argues the superior court erred in ruling he could still be convicted of murder as an aider and abettor even if he did not intend to kill. Devine also argues the court erred in finding he was guilty of felony murder without making findings on whether he acted with reckless indifference to human life. We agree with Devine on both points. Therefore, we reverse the order denying Devine's petition and direct the superior court to conduct a new evidentiary hearing under section 1172.6, subdivision (d).

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *Devine Pleads No Contest to One Count of Murder*

In 1998, when Devine was 16 years old, he befriended Mark Popp, who shared an apartment with his older brother, James Popp. Devine occasionally "hung out" with Mark in the apartment and played video games. After spending time with Mark one evening in April 1998, Devine left the apartment at 10:00 p.m. James came home from work between 10:45 and 11:00 p.m., and Mark left about five minutes later.

Later that night Devine was drinking with Fidel Castro, who was 22 years old, in a parking lot near Castro's car. Castro had recently been released from prison. Devine and Castro did

---

[1]    Statutory references are to the Penal Code.

not know each other well, but Devine was familiar with Castro's gang because Devine sold items he had stolen to members of the gang.[2] Devine told Castro that Mark sold marijuana. Castro said, "Why don't we go over there, buy some drinks and, you know, drink with him, smoke with him or whatnot." Devine agreed. Castro said, "When we get him nice and, you know, drunk, we'll take their stuff while they're drunk and not even looking."[3]

Devine had a pocketknife with him that belonged to a member of Castro's gang. He had been carrying it for two weeks. Devine "probably" told Castro he would take the knife with him and use it.

Devine took Castro to the Popps' apartment and knocked on the door. When James opened the door, Devine and Castro walked in. James asked, "What are you doing in my house?" James said he was going to call the police and picked up a cordless phone,[4] but Castro grabbed it and removed the batteries.

---

[2] Devine later told sheriff's deputies that he did not know Castro's name, but that he knew him as "Wacko" and that they had "been kicking it for a little bit." In his parole hearing, Castro said that, at the time of the crime, he was "fresh out of jail" and did not know Devine before that night.

[3] Devine initially told sheriff's deputies it was Castro who suggested going to Mark's apartment and stealing from him. Later in the interview, Devine said that the idea "came from both of our mouths" and that he did not remember who said it first.

[4] A cordless telephone is "a two-way, low power communication system consisting of two parts, a 'base' unit which connects to the public switched telephone network and a handset

Devine asked James where Mark was and when he was coming back.

Castro went into the kitchen and returned with a knife. Castro held James against a wall, pointed the knife at him, and told him to shut up. James asked, "Are you going to kill me?" Castro began to choke James. Castro told Devine to "go ahead and get it," and Devine went to the entertainment center and tried to remove the video game console.[5] As Castro struggled with James, Castro called to Devine, "help me, help me," and Devine ran over and hit James two or three times and kicked him once. Devine returned to the game console as Castro and James struggled on the floor.

While Devine was trying to remove the game console, he saw Castro stabbing James. Devine saw blood and "started getting shaky." Castro left to wash his hands. Mark returned to the apartment, and Devine heard the front door begin to open, which made him drop the game console. Castro pushed the door closed and said, "It's time to go." When Mark was able to open the door, he saw Castro trying to run away and Devine crouching and trying to remove the video game console. Mark asked

---

or 'remote' unit, that are connected by a radio link and authorized by the Federal Communications Commission to operate in the frequency bandwidths reserved for cordless telephones." (§ 632.7, subd. (c)(2); see *Smith v. LoanMe, Inc.* (2021) 11 Cal.5th 183, 192, fn. 3.)

[5] "Video game consoles are consumer devices designed for, and whose primary use is, to play video games." (*Federal Trade Commission v. Microsoft Corp.* (2023) ___ F.Supp.4th ___, ___ (N.D. Cal., July 10, 2023, No. 23-CV-02880-JSC) [2023 WL 4443412, p. 2].)

4

Devine, "What the fuck is going on?" and Devine "put up his hands like [he] didn't know." Mark saw James lying in a pool of blood 12-15 feet from the entertainment center and saw Castro with a red rag on one of his hands.

Castro and Devine fled through the door. Devine ran and hid in Castro's car. A friend of Castro's saw Devine in the car, told Devine to get into his car, and drove Devine to meet Castro's brother and friends, who wanted to know what had happened. Castro's friends told Devine to tell police he acted in self-defense. The person who loaned Devine the pocketknife told him to "get rid of that right now." Devine returned the knife to its owner, who threw it away. Castro's brother and friends drove Devine to the bus station, where he was arrested.

James died from multiple sharp force injuries. Investigators discovered a large steak knife covered in blood and wrapped in a towel on the dining room table of the apartment.

The People charged Devine with one count of murder (§ 187, subd. (a)), one count of first degree residential burglary (§ 459), and one count of attempted first degree residential robbery (§§ 211, 664). The People alleged as a special circumstance that the murder was committed while Devine was committing or attempting to commit residential burglary and attempted residential robbery, within the meaning of section 190.2, subdivision (a)(17).

Devine pleaded no contest to first degree murder. The trial court dismissed the remaining counts and allegations and sentenced Devine to a prison term of 25 years to life.

B.    *The Superior Court Denies Devine's Petition Under Section 1172.6*

In February 2019 Devine filed a petition for resentencing under former section 1170.95, now section 1172.6.  The People conceded Devine was not ineligible as a matter of law, and the superior court issued an order to show cause.  At the evidentiary hearing, the court stated it had reviewed the preliminary hearing transcript.  The court admitted the preliminary hearing transcript, the transcript of the deputies' interview with Devine, several minute orders, and the transcript of Devine's 2021 parole board hearing.  The court also admitted, at Devine's request, an excerpt from the transcript of Castro's 2022 parole board hearing.

The prosecutor argued Devine could still be convicted of murder as a principal who directly aided and abetted the murder and under the felony-murder rule as a major participant in a residential robbery who acted with reckless indifference to human life.  Counsel for Devine argued there was insufficient evidence to prove beyond a reasonable doubt that Devine aided and abetted the murder or that he was a major participant in a robbery who acted with reckless indifference to human life.

The superior court denied Devine's petition.  The court found Devine could still be convicted of first degree murder because the People proved beyond a reasonable doubt he was "a direct aider and abettor" and because, "aside from aiding and abetting, if the court is incorrect on that, the *Banks* factors for a major participant are met in this case."  Devine timely appealed.

## DISCUSSION

A.   *Section 1172.6*

Effective 2019, the Legislature substantially modified the law governing accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Reyes* (2023) 14 Cal.5th 981, 986; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843) and significantly narrowing the felony-murder exception to the malice requirement for murder (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957).  Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule in section 189, subdivision (e).  The latter provision requires the People to prove specific facts relating to the defendant's culpability:  The defendant was the actual killer (§ 189, subd. (e)(1)); the defendant, though not the actual killer, with the intent to kill assisted in the commission of the murder (§ 189, subd. (e)(2)); or the defendant was a major participant in a felony listed in section 189, subdivision (a), and acted with reckless indifference to human life, "as described in subdivision (d) of Section 190.2," the felony-murder special-circumstance provision. (§ 189, subd. (e)(3); see *Strong*, at p. 708; *Gentile*, at p. 842.)

Section 1172.6 authorizes an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the superior court to vacate the conviction and be resentenced on any remaining counts, if he or she could not now be convicted of murder because of the changes

7

the Legislature made effective 2019 to the definitions of the crime. (See *People v. Strong, supra,* 13 Cal.5th at p. 708; *People v. Lewis, supra,* 11 Cal.5th at p. 957; *People v. Gentile, supra,* 10 Cal.5th at p. 843.) If a section 1172.6 petition contains all the required information, the court must appoint counsel to represent the petitioner, if requested. (*Lewis,* at pp. 962-963; see § 1172.6, subd. (b)(1)(A), (3).) The prosecutor must then file a response to the petition, the petitioner may file a reply, and the court must hold a hearing to determine whether the petitioner has made a prima facie showing he or she is entitled to relief. (§ 1172.6, subd. (c).)

Where, as here, the petitioner has made the requisite prima facie showing he or she is entitled to relief under section 1172.6, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subd. (d)(1).) At that hearing the court may consider evidence "previously admitted at any prior hearing or trial that is admissible under current law," including witness testimony. (§ 1172.6, subd. (d)(3).) The petitioner and the prosecutor may also offer new or additional evidence. (*Ibid.*; see *People v. Gentile, supra,* 10 Cal.5th at pp. 853-854.)

On appeal from an order denying a petition under section 1172.6, we review the superior court's factual findings for substantial evidence. (*People v. Guiffreda* (2023) 87 Cal.App.5th 112, 125; *People v. Richardson* (2022) 79 Cal.App.5th 1085, 1090.) "In reviewing the trial court's findings for substantial evidence, we . . . examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of

8

solid value that would support a rational trier of fact in finding [the necessary fact] beyond a reasonable doubt. . . . While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*People v. Pittman* (2023) 96 Cal.App.5th 400, 414, internal quotation marks omitted; see *Guiffreda*, at p. 125; *People v. Clements* (2022) 75 Cal.App.5th 276, 298.) "'"Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence."'" (*People v. Navarro* (2021) 12 Cal.5th 285, 339; see *People v. Brooks* (2017) 3 Cal.5th 1, 57; *People v. Nieber* (2022) 82 Cal.App.5th 458, 476.) "But where there is an issue as to whether the trial court misunderstood the elements of the applicable offense, the case presents a question of law which we review independently." (*People v. Reyes*, *supra*, 14 Cal.5th at p. 988.)

B. *The Superior Court Erred in Finding Devine Directly Aided and Abetted Murder*

Devine argues the superior court misapplied the law in finding Devine aided and abetted the murder without finding he intended to kill. Devine is correct.

1. *Applicable Law*

"A person who aids and abets the commission of a crime is culpable as a principal in that crime." (*People v. Gentile, supra*, 10 Cal.5th at p. 843; see *People v. Powell* (2021) 63 Cal.App.5th 689, 712.) "'[U]nder direct aiding and abetting principles, an accomplice is guilty of an offense perpetrated by another [e.g.,

9

murder] if the accomplice aids the commission of that offense with "knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends."'" (*People v. Curiel* (Nov. 27, 2023, S272238) ___ Cal.5th ___, ___ [2023 WL 8178140, p. 15]; *Gentile*, at p. 843.)  Thus, a direct aider and abettor's guilt is "'based on a combination of the direct perpetrator's acts and the aider and abettor's *own* acts and *own* mental state.'" (*Powell*, at p. 710; see *People v. McCoy* (2001) 25 Cal.4th 1111, 1117.)  "'[P]roof of aider and abettor liability requires proof in three distinct areas: (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea—knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends, and (c) the aider and abettor's actus reus— conduct by the aider and abettor that in fact assists the achievement of the crime.'" (*People v. Vargas* (2022) 84 Cal.App.5th 943, 953-954; see *Curiel*, at p. ___ [p. 18].)

> 2.     *The Superior Court Did Not Find Devine Acted with the Intent To Kill*

Focusing on the actus reus element, the superior court found Devine engaged in several acts that assisted Castro in killing James.  The court found Devine was involved "in the planning details of the home invasion robbery," was "at the location with his own weapon," and helped Castro "physically overcome" James by punching him "in the face and the eye."  On the mens rea element, the court found Devine's statement to

sheriff's deputies showed "intent . . . to directly aid and abet."[6] That was insufficient. To find Devine directly aided and abetted murder with express malice, the court had to find that Devine knew Castro intended to kill James and that Devine shared that intent. (See *People v. Maciel* (2013) 57 Cal.4th 482, 518 [an "'aider and abettor's mental state must be at least that required of the direct perpetrator,' and when the crime is murder, the 'aider and abettor must know and share the murderous intent of the actual perpetrator'"]; *People v. Offley* (2020) 48 Cal.App.5th 588, 596 [same]; see also *People v. Gentile, supra,* 10 Cal.5th at p. 848 [a "direct aider and abettor to murder must possess malice aforethought"].) Because the superior court did not find Devine intended to kill, the court erred in finding he directly aided and abetted James's murder.

3.  *The Superior Court Did Not Find Devine Aided and Abetted Implied Malice Murder*

The People do not challenge Devine's contention the superior court did not find he intended to kill. Instead, the People argue the court properly denied Devine's petition because under current law he can be guilty of second degree murder for directly aiding and abetting implied malice murder, which does not require the intent to kill.

Murder is the unlawful killing of a human being with malice aforethought. (§ 187, subd. (a).) Malice "may be express

---

[6]     Although the court did not specify what portion of Devine's interview it was referring to, the court may have had in mind Devine's statement he "probably" told Castro something to the effect that he was going to take the pocketknife with him and use it.

11

or implied." (§ 188, subd. (a).) "It is express when there is a manifest intent to kill." (*People v. Gentile*, *supra*, 10 Cal.5th at p. 844; see § 189, subd. (a)(1).) "Murder is committed with implied malice when 'the killing is proximately caused by "'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.'"'" (*People v. Reyes*, *supra*, 14 Cal.5th at p. 988; see *People v. Pittman*, *supra*, 96 Cal.App.5th at p. 414.) "In short, implied malice requires a defendant's awareness of engaging in conduct that endangers the life of another—no more, and no less." (*People v. Knoller* (2007) 41 Cal.4th 139, 143; accord, *People v. Cravens* (2012) 53 Cal.4th 500, 507; *People v. Palomar* (2020) 44 Cal.App.5th 969, 974.)

Aiding and abetting implied malice murder remains a valid theory of liability for second degree murder, even after the Legislature eliminated natural and probable consequences liability for murder. (See *People v. Reyes*, *supra*, 14 Cal.5th at p. 990; *People v. Gentile*, *supra*, 10 Cal.5th at p. 850; *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 588.) "'[T]o be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering *act*, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life.'" (*Reyes*, at p. 991; see *People v. Curiel*, *supra*, ___ Cal.5th at p. ___ [p. 15]; *People v. Pittman*, *supra*, 96 Cal.App.5th at p. 415.) An "'aider and abettor who does not expressly intend

to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life.'" (*Reyes*, at p. 990; see *Gentile*, at p. 850.) "The requisite intent is a subjective one—the defendant must have "'*actually appreciated* the risk involved.'"'" (*People v. Superior Court (Valenzuela)* (2021) 73 Cal.App.5th 485, 501; see, e.g., *People v. Guillen* (2014) 227 Cal.App.4th 934, 991 [the defendant's conduct and statements demonstrated he was subjectively aware his conduct was dangerous to the victim's life].)

The problem with the People's argument is that, at the evidentiary hearing, the prosecutor never argued Devine was guilty of second degree murder for aiding and abetting implied malice murder. Nor did the superior court find Devine guilty under that theory. To find Devine guilty of aiding and abetting implied malice murder, the superior court would have had to find that Devine knew Castro intended to attack James, that Devine intended to aid Castro in attacking James, that Devine knew the attack was dangerous to human life, and that Devine acted in conscious disregard for human life. (See *People v. Reyes*, *supra*, 14 Cal.5th at p. 991; *People v. Pittman*, *supra*, 96 Cal.App.5th at p. 414.) The People argue Devine's statement to Castro that he was prepared to use the pocketknife "reflected a willingness to use lethal violence, which in turn demonstrated a conscious disregard for life."[7] But that is an argument properly directed to

---

[7] Devine correctly points out that, although at the evidentiary hearing the People relied heavily on the statement about the pocketknife as evidence Devine acted with malice and reckless indifference to human life (which the People continue to

13

the superior court and should have been made at the evidentiary hearing.  Because neither the parties nor the court addressed Devine's potential liability under an implied malice theory, we cannot say the court made an implied finding Devine acted in conscious disregard for human life.

The cases on which the People rely are distinguishable because in those cases the superior court at the evidentiary hearing found the defendant guilty of aiding and abetting implied malice murder.  For example, in *People v. Didyavong* (2023) 90 Cal.App.5th 85, a jury convicted the defendant of first degree murder.  (*Id*. at p. 92.)  At the evidentiary hearing on the defendant's petition under section 1172.6, the prosecutor argued the defendant could be guilty as an aider and abettor of either first degree murder or second degree implied malice murder. (*Id*. at p. 93.)  The superior court in *Didyavong* ruled "the People proved beyond a reasonable doubt that [the defendant] was guilty of murder as an aider and abettor under an implied malice theory." (*Ibid*.)  In *People v. Vizcarra* (2022) 84 Cal.App.5th 377,

---

argue on appeal), Devine's statement was not an unqualified admission he intended to stab someone.  Sheriff's deputies asked Devine several times about the pocketknife.  Devine said that he did not show the pocketknife to Castro and that he did not take it out of his pocket until after he fled the Popps' apartment.  The fourth time the deputies returned to the topic of the pocketknife, they asked Devine, "Did you ever tell [Castro] that this—you were going to use this knife—take it with you and use it.  This is what you were going to take with you?  Something to that effect?" Devine answered, "I probably did."  Moreover, as Devine argues, it is not clear he understood "using" the knife meant anything more than "carry[ing] something for protection," which is how the deputies had previously referred to the knife.

a jury found the defendant guilty of second degree murder. At the evidentiary hearing on the defendant's petition under section 1172.6, the superior court found the defendant "directly aided and abetted an implied malice murder." (*Id*. at p. 382; see *People v. Vargas*, *supra*, 84 Cal.App.5th at p. 954 [superior court did not err in denying a section 1172.6 petition after finding the defendant, who had been convicted of second degree murder, acted with implied malice in aiding and abetting the murder].) In contrast, the superior court here did not find the People proved beyond a reasonable doubt (or at all) the elements of aiding and abetting implied malice murder, and thus the court could not have denied Devine's petition on that theory. (See § 1172.6, subd. (d)(3) [at the evidentiary hearing "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder"]; *People v. Strong*, *supra*, 13 Cal.5th at p. 709.)

C. *The Superior Court's Findings Were Insufficient To Convict Devine of Felony Murder Under Current Law*

1. *Factors for Determining Whether a Defendant Was a Major Participant and Acted with Reckless Indifference to Human Life*

As discussed, section 189, subdivision (e)(3), provides that a participant in one of the felonies listed in section 189, subdivision (a) (which include robbery, burglary, and their attempts), may be liable for murder if the prosecution proves he or she "was a major participant in the underlying felony and acted with reckless indifference to human life," within the

15

meaning of section 190.2, subdivision (d).  (See *People v. Strong*, *supra*, 13 Cal.5th at p. 708; *People v. Gentile*, *supra*, 10 Cal.5th at pp. 842-843.)  The Supreme Court in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) "clarified the meaning of the special circumstances statute."  (*In re Scoggins* (2020) 9 Cal.5th 667, 676; see *People v. Ramirez* (2021) 71 Cal.App.5th 970, 987.)

Among the factors that "may play a role in determining whether a defendant's culpability is sufficient" for a finding he or she was a major participant under section 190.2, subdivision (d), are:  "What role did the defendant have in planning the criminal enterprise that led to one or more deaths?  What role did the defendant have in supplying or using lethal weapons?  What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?  Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?  What did the defendant do after lethal force was used?"  (*Banks*, *supra*, 61 Cal.4th at p. 803, fn. omitted; see *People v. Mitchell* (2022) 81 Cal.App.5th 575, 591; *People v. Ramirez*, *supra*, 71 Cal.App.5th at p. 986, fn. 10.)

"Reckless indifference to human life has a subjective and an objective element.  [Citation.]  As to the subjective element, '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and he or she must consciously disregard 'the significant risk of death his or her actions create.'  [Citations.]  As to the objective element, "'[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's

16

conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.'"" (*In re Scoggins*, *supra*, 9 Cal.5th at p. 677; see *People v. Keel* (2022) 84 Cal.App.5th 546, 557.) "Awareness of no more than the foreseeable risk of death inherent in any armed crime is insufficient; only knowingly creating a 'grave risk of death' satisfies the constitutional minimum." (*Banks*, *supra*, 61 Cal.4th at p. 808.)

To determine whether a defendant acted with reckless indifference to human life under section 190.2, subdivision (d), courts consider, among other factors, the following: "Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony?" (*In re Scoggins*, *supra*, 9 Cal.5th at p. 677; see *Clark*, *supra*, 63 Cal.4th at pp. 618-623.) In addition, "a defendant's youth at the time of the offense should be a factor in determining whether that defendant acted with reckless indifference to human life." (*In re Moore* (2021) 68 Cal.App.5th 434, 439; see *People v. Mitchell*, *supra*, 81 Cal.App.5th at p. 595 ["[y]outh can distort risk calculations"]; *People v. Ramirez*, *supra*, 71 Cal.App.5th at p. 990 [a defendant's youth "greatly diminishes any inference he acted with reckless disregard for human life"].)

17

2. *The Superior Court Failed To Make Findings on Whether Devine Acted with Reckless Indifference to Human Life*

At the evidentiary hearing the prosecutor argued that, under the *Banks* factors, Devine was a major participant in the robbery. The prosecutor argued that Devine planned a "home invasion"; that he went to the Popps' apartment with Castro, "a violent gang member"; that he brought a pocketknife; and that he saw Castro choking James. The prosecutor further argued that Devine helped subdue James by punching and kicking him, that Devine did nothing to help James, and that, after Castro stabbed James, Devine fled and got rid of the pocketknife. Counsel for Devine argued Devine was not a major participant because Devine and Castro spontaneously came up with the idea to rob the Popps, Devine played no role in supplying the murder weapon, and Devine did not know Castro was violent. Counsel further argued that, once Devine realized Castro was using lethal force, he ran away without helping Castro.

The prosecutor also argued Devine exhibited reckless indifference to human life under the *Clark* factors. The prosecutor argued that Devine brought a pocketknife and said he was ready to use it, that Devine saw Castro get a knife from the kitchen, and that Devine was present when Castro stabbed James. The prosecutor further argued that the attack was not a quick drive-by shooting, but was "protracted" and lasted between 10 and 30 minutes, which gave Devine "time to reflect." Finally, the prosecutor argued Devine did nothing to minimize the violence, even though he knew Castro was a gang member and likely to kill, they were planning to steal drugs, and they knew

18

someone was home.  Counsel for Devine did not directly address the *Clark* factors, but argued Devine's youth affected his "ability to gauge consequences in terms of reckless indifference and his ability to determine outcome and consequences."

The court focused on whether under *Banks* Devine was a major participant in the robbery.  During the hearing, the court asked counsel for Devine to address the *Banks* factors for major participation.  And when ruling on the petition, the court discussed the evidence regarding each of the *Banks* factors.  The court stated that Devine was involved in planning the details of the robbery, that he brought a weapon ("albeit it was not one that was used") to the scene, that Devine was actively involved in taking the video game system, and that he hit James.  The court also found Devine's statement to sheriff's deputies showed "he acted as a major participant."  The court added that Devine was "present" and "continued his conduct" during the entire stabbing, which was "more personal" and "takes longer than a shooting." The court concluded "the *Banks* factors for a major participant are met in this case."

In contrast to its careful analysis of the factors supporting its finding Devine was a major participant in the underlying felony, the court made no finding Devine acted with reckless indifference to human life.  Although the "major participant" and "reckless indifference" requirements overlap to some extent, they are separate, and the People must prove both beyond a reasonable doubt.  (*Clark*, *supra*, 63 Cal.4th at p. 615; see *Banks*, *supra*, 61 Cal.4th at p. 810, fn. 9 [a major participant in an armed robbery that results in a death does not necessarily exhibit reckless indifference to human life].)  In the absence of such a

19

finding, the superior court erred in finding Devine guilty of felony murder under current law.

The People argue that the court did not have to "expressly" find Devine acted with reckless indifference to human life and that during the evidentiary hearing both sides "heavily addressed" the reckless indifference requirement and the *Banks* and *Clark* factors. It is true the parties (and the court) addressed the *Banks* factors for determining whether Devine was a major participant in the robbery. But that is not true for the *Clark* factors for determining whether Devine acted with reckless indifference to human life. Although the prosecutor discussed the *Clark* factors, counsel for Devine did not, other than to mention Devine's youth. More important, the court did not mention the reckless indifference requirement or analyze Devine's conduct in light of the *Clark* factors. Thus, we cannot conclude the superior court impliedly found Devine acted with reckless indifference to human life. Nor, given the evidence to the contrary, can we presume the superior court knew and applied "the correct statutory and case law." (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042.)

D.  *The Superior Court's Errors Were Not Harmless*

The People argue any error was harmless because "compelling evidence demonstrated that [Devine] acted with conscious disregard for life under an implied malice theory, and that he acted with reckless indifference to life under a felony murder theory." In evaluating whether error in ruling on a petition under section 1172.6 is harmless, the reviewing court considers whether under the standard in *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*) it is reasonably probable the superior

20

court would have granted Devine's petition in the absence of error.[8] "'A "reasonable probability" "does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*."'" (*People v. Pittman, supra*, 96 Cal.App.5th at p. 418; see *People v. Hardy* (2021) 65 Cal.App.5th 312, 329.)

### 1. *Implied Malice Murder*

Was it reasonably probable the superior court would have granted Devine's petition had it considered and made express findings on whether Devine acted with implied malice in aiding and abetting murder? Yes.

To be sure, there was evidence to support an inference Devine acted with implied malice. Devine saw Castro get the knife from the kitchen and point it at James. When Castro asked Devine to help subdue James, Devine complied with force. Devine told sheriff's deputies that he heard James ask Castro whether he was going to kill him (i.e., James) and that he thought Castro was going to choke James to death. Devine also told sheriff's deputies he "probably" told Castro he was going to bring and use the pocketknife. This evidence could support findings that Devine knew Castro's actions endangered James's

---

[8] Although Devine contends we should apply the federal harmless error standard in *Chapman v. California* (1967) 386 U.S. 18, 24, it is the state law standard in *Watson* that applies. (See *People v. Oliver* (2023) 90 Cal.App.5th 466, 489, fn. 8 [*Watson* harmless error standard applies to the superior court's failure to consider evidence in deciding whether the defendant was a major participant who acted with reckless indifference to human life]; *People v. Myles* (2021) 69 Cal.App.5th 688, 706 [*Watson* harmless error standard applies to evidentiary errors at an evidentiary hearing under section 1172.6].)

life, that Devine intended to aid Castro in a dangerous attack, and that Devine acted in conscious disregard for human life.

But there was also evidence to support an inference Devine did not act with implied malice. Devine and Castro planned to commit an unarmed robbery. Devine told investigators Castro suggested to him, "Let's drink with them and smoke weed with them, and then when they get all faded, and, uh, we'll just take their stuff when they're not even looking." Castro went to the Popps' apartment without a weapon, and though Devine had a pocketknife with him, he never took it out. Nor was there evidence Devine knew the unarmed Castro, whom Devine did not know very well, was likely to be violent. Although Devine knew Castro was a gang member, there was no evidence Devine knew Castro had a reputation for violence. From this evidence it is reasonably probable the superior court could have found that Devine did not know Castro intended to attack James with a knife and that Devine did not intend to aid a dangerous attack. The whole idea was to steal things from the apartment when the Popps were drunk, high, or inattentive (or all three).

Devine's youth at the time of the crime was also relevant to whether he acted with implied malice. (See *People v. Pittman*, *supra*, 96 Cal.App.5th at pp. 417-418 [remanding for the superior court "to consider how, if at all," the 21-year-old defendant's "youth impacted his ability to form the requisite mental state for second degree murder"].) Devine was 16 years old at the time of the crime. Devine's mother told the probation officer that Devine had severe attention deficit hyperactive disorder and dyslexia and that he was "mentally five years behind his chronological age" (which would have given him a mental age of about 11). The

probation officer who interviewed Devine described him as "mild-mannered" and "rather slow-witted."

The "'hallmark features'" of youth include "'immaturity, impetuosity, and failure to appreciate risks and consequences.'" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1377; accord, *People v. Keel*, *supra*, 84 Cal.App.5th at p. 562.)  "The cases discussing the role of youth in relation to criminal culpability 'stress two areas': youthful offenders' 'relative impulsivity' and 'their vulnerability to peer pressure.'" (*People v. Pittman*, *supra*, 96 Cal.App.5th at p. 418; see *People v. Oliver*, *supra*, 90 Cal.App.5th at p. 489.)  There was evidence Devine may have been influenced by all of these hallmark features of youth.  He may not have subjectively appreciated the risk involved in the plan to steal from the Popps or the risk, once Castro picked up the kitchen knife, Castro would use it, not only to intimidate James, but to kill him.  (See *People v. Superior Court (Valenzuela)*, *supra*, 73 Cal.App.5th at p. 501 [to act with implied malice, the defendant must have subjectively appreciated the risk involved].)  In addition, Devine acted impulsively when he and Castro spontaneously decided to go to the Popps' apartment to steal marijuana and a video game console from Mark.  Once in the Popps' apartment, Devine's actions reflected his immaturity: He focused on stealing the video game console, not on attacking James.  As for vulnerability to peer pressure, there was evidence Devine, who had stolen things from unoccupied cars but had no record of violence, was influenced by the 22-year-old Castro, a gang member who had recently been released from jail, to go to the Popps' apartment to steal from Mark.  It is also reasonable to infer that Devine's vulnerability to peer pressure influenced his decision to join in the attack on James when Castro asked him to.

23

Thus, it is reasonably probable the superior court, had it considered the evidence on the issue of implied malice, would have found Devine did not subjectively appreciate that his conduct endangered James's life or that Devine acted in conscious disregard for human life.

### 2. *Reckless Indifference*

Was it reasonably probable the superior court would have granted Devine's petition had it made express findings on whether, under the felony-murder rule, Devine acted with reckless indifference to human life? Again, yes.

As discussed, under *Clark* the superior court should have considered whether Devine knew weapons would be used in the crime, as well as their actual use and number; Devine's proximity to the crime and opportunity to stop the killing or aid James; the duration of the crime; whether Devine knew of Castro's propensity to kill; and Devine's efforts to minimize the possibility of violence during the crime. (*Clark*, *supra*, 63 Cal.4th at pp. 618-623; see *In re Scoggins*, *supra*, 9 Cal.5th at p. 677.) There was some evidence Devine acted with reckless indifference to human life. While Castro was stabbing James, Devine was only 12 to 15 feet away, trying to disconnect the video game console from the entertainment center. Rather than trying to stop Castro or aid James, Devine assaulted James when Castro asked for help. It is not clear Devine could have convinced Castro to stop attacking James, but there is no evidence he tried. As for the duration of the crime, it was not like a robbery where a confederate suddenly pulls out a gun and shoots the victim; Castro inflicted multiple knife wounds on James. The attack unfolded slowly enough for Devine to observe Castro holding James at knifepoint and

24

stabbing him, which meant Devine had at least a brief opportunity to intervene.

But there was also evidence Devine did not act with reckless indifference to human life. As discussed, the plan was to get Mark and James drunk and steal from them without using any force. There was only one weapon, the kitchen knife, and Castro, not Devine, used it. There was no evidence Devine knew Castro was violent or would use a knife during the robbery, nor was there evidence Devine encouraged Castro to get the knife from the kitchen. In addition, a "juvenile's immaturity and failure to appreciate the risks and consequences of his or her actions bear directly on the question whether the juvenile is subjectively "'aware of and willingly involved in the violent manner in which the particular offense is committed'" and has 'consciously disregard[ed] "the significant risk of death his or her actions create."'" (*People v. Ramirez, supra,* 71 Cal.App.5th at p. 991; see *People v. Jones* (2022) 86 Cal.App.5th 1076, 1088, fn. 7 ["In addition to the *Banks* and *Clark* factors, a defendant's youthful age must be considered."].) As discussed, Devine's youth may have affected his ability to appreciate the risk involved in the plan to steal from the Popps and the risk Castro would use the knife to kill James. (See *Ramirez*, at p. 991 [15-year-old defendant's age may have affected "his calculation of the risk of death posed by using the firearm in the carjacking, as well as his willingness to abandon the crime"]; *In re Moore, supra,* 68 Cal.App.5th at p. 453 [even if the evidence supported "a finding of reckless indifference for an adult, it is not sufficient to establish that [the defendant], who was 16 at the time of the shooting, had the requisite mental state"]; *People v. Harris* (2021) 60 Cal.App.5th 939, 960 [it was "far from clear" the 17-year-old

25

defendant "was actually aware 'of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants'"].)

Thus, it is reasonably probable that, had the superior court considered and weighed the evidence in light of the *Clark* factors, the court would have found Devine did not act with reckless indifference to human life.  Therefore, we cannot conclude the court's error was harmless.

## DISPOSITION

The order denying Devine's petition under section 1172.6 is reversed.  The superior court is directed to conduct a new evidentiary hearing and make findings on, among other things, whether Devine had the mens rea required for aiding and abetting murder and whether the People met their burden to show beyond a reasonable doubt that Devine is still guilty of felony murder under section 189, subdivision (e)(3).


SEGAL, Acting P. J.

We concur:


FEUER, J.



MARTINEZ, J.


26